684 So.2d 1054 (1996)
STATE of Louisiana, Appellee,
v.
Kedrick O'Neal HENDERSON, Appellant.
No. 28932-KA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 1996.
*1055 George D. Ross, Peggy J. Sullivan, Monroe, for appellant.
Richard Ieyoub, General Appellee, Jerry L. Jones, District Attorney, Stephen T. Sylvester, Assistant District Attorney, for appellee.
Before STEWART, GASKINS and PEATROSS, JJ.
GASKINS, Judge.
After being convicted of second degree murder by a jury and receiving the mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence, the defendant, Kedrick O'Neal Henderson, appeals. For the following reasons, we affirm the defendant's conviction.

*1056 FACTS
On November 27, 1994, Rosalyn Taylor, the defendant's nineteen year old girlfriend, died of a gunshot wound to the abdomen. The shooting occurred in the victim's bedroom following an argument with the defendant. The defendant was arrested and charged with second degree murder. Following a jury trial, he was convicted as charged.
The defendant and the victim had been dating for approximately three months at the time of the shooting. The victim lived in an apartment with her sister, Crystal. The defendant frequently spent the night in the apartment. At about nine p.m. on November 26, 1994, Crystal Taylor arrived at her apartment to find the defendant inside. The victim came home at approximately one a.m. on November 27, 1996, after spending the evening playing cards at her cousin's house. From her bedroom, Crystal Taylor heard the defendant questioning her sister about where she had been that evening.
Leanne Davis, the Taylors' neighbor, testified that from the parking lot outside the apartment, she saw and heard the defendant and Rosalyn in a bedroom "passing licks" and "push[ing] one another around." Mrs. Davis and her husband were able to get the two to come outside where they talked for a while. Mrs. Davis testified that the defendant and Ms. Taylor did not appear to be angry with each other, but Ms. Taylor did not want to go back into the house with the defendant.
Upon returning to the apartment, Rosalyn and the defendant went into Crystal's bedroom. Rosalyn asked Crystal to tell the defendant to get his things and leave the apartment. Crystal did so and the defendant agreed to go. Crystal testified that the defendant left her bedroom and she soon heard the front door open and close. At that point, she assumed that the defendant had left the apartment. Crystal and Rosalyn talked for a few minutes and then Rosalyn went to her bedroom across the hallway to clean out her closet. Crystal heard the sounds of her sister moving around in her bedroom and then, without warning, she heard a gunshot.
Crystal ran into her sister's room and saw Rosalyn standing, facing the inside of the closet. The defendant was standing next to her. Rosalyn collapsed and the defendant caught her, pulled her to her bed and began to perform CPR. Crystal saw a gun in the defendant's lap. Because she had no telephone, Crystal ran to a neighbor to call the police and an ambulance. While Crystal was gone, Leanne Davis came into the Taylors' apartment and saw the defendant performing CPR on the victim. She also saw the defendant with a pistol.
After calling for assistance, Crystal returned to her sister's bedroom and took over the CPR. She testified that the defendant appeared "shocked or something" and asked her why she had called the police. Crystal and the defendant exchanged words and, as the police arrived, the defendant ran out the back door. Paramedics took the victim to the hospital where she died later that morning from the gunshot wound to her abdomen.
As the defendant left the scene, he caught a ride with William Marshall, a friend and co-worker who happened to be passing by. They drove to a friend's house where the defendant, Mr. Marshall and their friend sat in the car drinking and talking the rest of the night. Mr. Marshall testified that the defendant told him about the shooting and showed him the pistol. The witness testified that the defendant told him that Rosalyn was cleaning up the room, found the pistol "on top of the shelf [in the closet]" and "it went off and shot her." Mr. Marshall examined the gun, which was not loaded at that time. According to Mr. Marshall, the defendant had the bullets with him. While he was with Mr. Marshall, the defendant called the hospital at least three times to check on Ms. Taylor's condition.
After the sun rose, Mr. Marshall drove the defendant to a motel. Because the defendant had no identification with him, Mr. Marshall secured a room for the defendant. Without Mr. Marshall's knowledge, the defendant left the pistol and several bullets under the seat of Marshall's car. Mr. Marshall later discovered the gun, a .38 Smith and Wesson Special revolver, Model 10-5, and gave it to police. He also informed the *1057 police that the defendant was staying at the motel.
The defendant was arrested at the motel later that day and made a statement to police. The defendant told police that he was in the room while Rosalyn was cleaning up and the victim had found his pistol under the mattress of the bed. The defendant said that Rosalyn handed him the gun butt first and, as he grabbed it, the weapon fired. He said that the victim stood about fourteen inches away from him when the gun went off.
While the victim was at the hospital, Monroe Police Sergeant James Fried had paper bags placed over her hands to preserve whatever gunshot residue might be present. The state and the defendant stipulated that a scientist from the Mississippi Crime Lab examined samples taken from the victim's hands and found no gunshot residue. Officer Fried testified that the absence of gunshot residue on the victim's hands led him to disbelieve the defendant's version of events because residue would have been present if the victim had been touching the gun when it went off. Officer Fried also testified that the defendant had at first stated that he threw the gun into some bushes as he fled the scene, but later told police that the gun was in Mr. Marshall's car.
The state's forensic expert testified that the victim's shirt had been perforated by a bullet, but bore insufficient gunpowder residue to permit the determination of the distance from the weapon to the victim. He further testified that if the shirt had been handled a lot, some of the powder residue would have been removed.
The pathologist who performed the autopsy on the victim testified that the wound was a contact wound, i.e., the gun's muzzle was pressed against the victim's body when the fatal shot was fired. He testified that the bullet severed the victim's aorta, causing massive internal bleeding and death.
Defendant testified at the trial. He said that after Rosalyn found the gun under the mattress, she walked over to the closet to find the pouch that the gun belonged in. He testified that when she could not find the pouch, Rosalyn gave the gun to him and that it discharged as he reached for it. The defendant admitted that the gun was his and that he had "bought it from a guy off the streets." He did not know the location of the pouch that Rosalyn was allegedly searching for and no pouch was found at the scene.
The jury found the defendant guilty of second degree murder. The defendant appealed his conviction, urging numerous assignments of error.

MOTION TO CONTINUE
The defendant objects to the trial court's denial of his motion for continuance. The defendant argues that he was not given the autopsy report until the day of trial, even though the state had the report for more than a year prior to trial. He also argues that the state failed to provide him with a copy of the laboratory report, relating to gunshot residue on the victim's shirt and the victim's hospital records, until the day of the trial. The defendant contends that the failure of the state to timely disclose these items prevented him from adequately preparing for trial. He argues that he was entitled to a continuance on this basis and the trial court's denial of his motion requires reversal of his conviction. Based strictly upon the limited facts of the present case, we find that the defendant's arguments are without merit.

Background
On January 17, 1995, defendant filed a motion for discovery, requesting copies of reports or scientific tests in the state's possession. The state's response to this motion indicated that the state possessed certain physical evidence against the defendant and included copies of the arrest report and warrant, a transcript of the defendant's statement to police, the offense and investigation reports and the defendant's "rap sheet."
The response also included a crime laboratory report indicating that no gunshot residue was found on a sample labeled "Rosalyn Taylor." The report does not specify where on the victim's body the sample was taken, although the investigation reports indicate that the sample was taken "from victim, from the coroner's office." This investigation report also notes that the weapon, bullet from *1058 the victim's body and the victim's shirt had been sent to the North Delta Crime Lab "for analysis." The investigation report indicates that the victim's shirt was perforated by a bullet hole and that the shirt "had powder stains around the hole." No laboratory analysis report concerning the shirt is included in the discovery response, and none of the investigation reports contain any information about the results of such testing. The report also disclosed that the police had a "preliminary autopsy report" indicating that the victim's wound was a "contact penetration."
The final autopsy report was received by the police on December 12, 1994. In the police report, Officer Fried reported that the pathologist told him over the phone that the victim's wound was "inconsistent with an accidental discharge as described by defendant." This police report bears the notation "transferred to the DA's office on 12/19/94."
On the day the trial began, the defendant filed a motion for continuance arguing that, even though the defense timely filed motions for discovery, the state failed to provide the defense with laboratory reports such as a trigger pull test on the gun, the gunshot residue report from the victim's hands, the test results from the victim's shirt, the autopsy report and the victim's hospital records. The defense argued that, due to the failure of the prosecution to furnish these reports prior to trial, a continuance was required to allow the defense to review the reports and secure rebuttal witnesses, if needed, and to properly prepare for trial.
Following a recess, the hearing on the motion for continuance was resumed. It was determined that the defendant had been given the ballistics report on the weapon and that neither the defendant nor the state had the victim's hospital records. The hospital records were immediately subpoenaed and made available to the defendant. The laboratory report on the victim's shirt was issued on the day the trial began and was immediately made available to the defendant when received by the prosecution. The autopsy report was also provided to the defendant. In denying the motion for continuance, the trial court found that, because the defense had all the information the state possessed and the state was to immediately furnish to the defense any other information that it might receive, there was no basis for the continuance.
The defendant appealed the trial court ruling, arguing that the denial of his motion for a continuance was error sufficiently prejudicial to merit reversal of his conviction. He argues that the state's failure to provide him with the victim's autopsy report and hospital records, as well as the results of scientific testing on the victim's shirt until after the trial had begun, caused irreparable harm to the defense's ability and opportunity to rebut the evidence.

Legal Principles
A timely filed motion for continuance may be granted, in the discretion of the court, in any case if there is good ground therefor. La.C.Cr.P. art. 712. The denial of a continuance will not be disturbed absent an abuse of discretion. State v. Bourque, 622 So.2d 198 (La.1993); State v. Vaccaro, 411 So.2d 415 (La.1982); State v. Williams, 605 So.2d 686 (La.App. 2d Cir.1992), writ denied, 612 So.2d 66 (La.1993). Unless defense counsel has such minimal time to prepare that the "fairness" of the proceeding is questionable, the defendant must show specific prejudice arising out of the denial of a continuance. State v. Vaccaro, supra; State v. Williams, supra. Whether a denial is justified depends on the circumstances of the case. State v. Bourque, supra. Under some circumstances, the denial of a motion to continue may present reversible error. State v. Benson, 368 So.2d 716 (La.1979).
The state has a continuing duty to disclose to the defense the existence of evidence which may be used at trial. La.C.Cr.P. art. 729.3 provides:
If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or *1059 allow the other party to make an appropriate motion for additional discovery or inspection.
The state's failure to timely comply with the discovery procedures is subject to a broad range of sanctions. These are set forth in La.C.Cr.P. art. 729.5, which provides, in pertinent part:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
At no time, either during the hearing on the motion to continue or at the appropriate points during trial, did the defendant move to exclude the complained of evidence on the ground that it was not timely provided by the state. Instead, the defendant sought a continuance. Rather than grant this relief, the trial court elected one of the other remedies permitted under La.C.Cr.P. art. 729.5 and ordered the state "to permit the discovery or inspection."

Discussion
The defendant argues that because the laboratory report on the shirt, the autopsy report and the hospital records were not made available until the day of trial, he did not have sufficient time to prepare his defense and should have been granted a continuance. He also argues that because he had such a minimal time to prepare, the fairness of the proceeding is questionable and therefore he is not required to show specific prejudice in the denial of the continuance. We find that, limited to the specific facts of this case, the defendant was not prejudiced by being provided with the reports on the day of trial and therefore the trial court did not commit reversible error in refusing to grant his motion for continuance.
State's exhibit 12 is the one-page laboratory report on the ballistics and trigger pull of the weapon as well as the gunshot residue analysis on the victim's shirt. This report was dated February 5, 1996, the date the trial began. The report reflects that the ballistics and trigger pull tests were completed, respectively, on December 8 and 9, 1994. In its January 1995 discovery response, the state provided the defendant with a police report which contained the substance of these two tests.
However, the results of the distance test on the victim's shirt to determine how close the gun was when fired was not complete until the day trial began. When a firearm is discharged in close proximity to a target, pieces of soot and unburned gunpowder may be deposited on the target. The size and distribution of this material may allow an expert to determine the distance from the weapon to the target. In the instant case, the victim's shirt did not bear sufficient residue for the expert to make the distance determination. This distance was relevant in the instant case because the defendant told police that the gun accidentally discharged approximately 14 inches from the victim's body whereas the coroner's report indicated that the gun was in contact with the victim's body when the fatal shot was fired.
On Wednesday, February 7, criminalist David Yates testified that the victim's shirt bore insufficient gunpowder residue for the lab to determine how far the muzzle of the gun was from the victim when the fatal shot was fired. The results of this test were furnished to the state and the defense on Monday, February 5, the date the trial began. Defendant made no objection to the entry of this report into evidence. In his brief, he argues that the absence of objection was a matter of strategy and that his motion to continue preserves for review the propriety of the admission into evidence of the report.
This court has previously held that the state need not disclose information it does not possess. State v. Powell, 598 So.2d 454 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992); State v. Kidd, 568 So.2d 175 (La.App. 2d Cir.1990). See also State v. Williams, 448 So.2d 659 (La.1984). This rule would seem to negate the defendant's claim *1060 that the state's disclosure of the evidence on the day trial began warranted a continuance as a sanction under La.C.Cr.P. art. 729.5.
Defendant asserts that the case of Kyles v. Whitley, ___ U.S. ___, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), mandates that the prosecutor should be held responsible for the information held by other state agencies and the state has an affirmative duty to disclose that information to defendant. In Kyles, numerous inconsistencies and other Brady information was not relayed to defense counsel, which if disclosed, would have made a different result reasonably probable. In the instant case, the information complained of was not Brady material, and was, in fact, conveyed to defense counsel prior to trial.
Under the specific facts of this case, the trial court did not err in failing to grant the motion for continuance and the defendant was not prejudiced. First, the evidence contained in the distance test on the shirt is not exculpatory. The result of the distance test was inconclusive due to the lack of residue on the garment. Because of this factor, no distance could be determined. Therefore, the evidence does not tend to prove the state's theory of an intentional contact shooting or the defendant's theory of an accidental shooting from 14 inches away. Moreover, the defendant admitted on the stand that he wasn't sure whether the pistol was touching the victim when the fatal shot was fired.
Further, it is not disputed that the results of this test were not concluded until the day the trial commenced and therefore was not available to the state or the defendant. There is no showing that any subdivision of the state had the results of the test prior to trial or that the results were withheld from the prosecution or the defendant. Therefore, because this evidence was not exculpatory, was inconclusive and was not available to the prosecution until the first day of the trial, the defendant was not prejudiced by the failure of the trial court to grant a continuance.
The defendant claims he was prejudiced by the belated disclosure of the autopsy report which the state received on December 19, 1994. As stated above, a police report discussing the autopsy was provided to the defendant during discovery. The police report indicates that the coroner determined that the victim's wound was a "contact penetrating" wound and defines that term as meaning "muzzle was against victim's stomach." Moreover, included in this report is the police officer's account of his conversation with the coroner wherein the coroner said that this type of wound was "inconsistent with an accidental discharge as described by defendant." This information was sufficient to put the defendant on notice that the physical evidence contradicted the version of events he gave to police.
At trial, Dr. Stephen Hayne, a forensic pathologist who performed the autopsy on the victim, testified about the cause of the victim's death, stating that the wound to her abdomen was a "contact and penetrating" wound. The doctor said that this type of wound could not have been inflicted from 14 inches away as the defendant had told police in his statement. This witness was available for cross examination by the defendant at trial.
Like the crime lab reports, the autopsy report contains no exculpatory information. The ultimate issue in this case was whether the victim was shot accidentally or intentionally. Defendant told police that the pistol was more than a foot away from the victim's body and fired by accident as the victim handed it to him. The coroner's report shows that the muzzle of the gun was against the victim's abdomen, tending to disprove the defendant's theory.
The record further demonstrates that the defendant was not at all surprised by the contents of the report. Along with his motion to continue, defendant filed a motion in limine arguing that Dr. Hayne should not be allowed to testify that the victim's wound was "inconsistent with an accident." Clearly, the defendant was on notice that the autopsy contradicted his previous story because this quote came directly from the police report. Although the trial court did not explicitly grant this motion, it made clear that
Well, I've said that [the doctor] can express his opinion as to how far the muzzle was ..., and then the jury will make a determination as to whether that is ... *1061 consistent or inconsistent with an accidental shooting.
In short, the defendant has failed to show how he was prejudiced by the belated disclosure of the autopsy report and the denial of his motion for a continuance. Although we find that the better practice would have been for the state to more diligently ensure that this report was timely released to the defendant, because, in this case the defendant was informed of the substance of the report well prior to trial, we find no prejudice, even though this report was provided to the defendant on the day of trial. See State v. Robinson, 624 So.2d 1260 (La.App. 2d Cir.1993), writ denied 93-2899 (La.2/11/94), 634 So.2d 372 and State v. Burrow, 565 So.2d 972 (La. App. 5th Cir.1990), writ denied 572 So.2d 60 (La.1991).
The defendant argues that the state's failure to provide him with the victim's hospital records warranted the granting of a continuance because "defendant was entitled to this information before trial in order to have a chance to determine its possible use or even to prepare a rebuttal to its possible introduction into evidence." The state never had this information in its possession until after the trial commenced and the records were not introduced into evidence at trial. Moreover, La.C.Cr.P. art. 732 and La. R.S. 13:3715.1(B)(3) and (5) permit the defendant to obtain the records himself via a subpoena duces tecum. Defendant has not shown that his failure to subpoena the hospital records is attributable to the prosecution. We also note that, as with the report relating to the distance test on the victim's shirt, the state and the defendant received the information at the same time. The trial court did not err in failing to continue the case because the state had not provided the defendant with the victim's hospital records.
In sustaining the trial court ruling which denied the defendant's motion for continuance, we do not sanction less than diligent efforts by the prosecution to conclude discovery prior to trial and to ensure that the defendant is in receipt of all discoverable material. We simply find that, closely limited to the specific facts of this case, the defendant was not prejudiced and therefore a reversal of his conviction is not warranted.

MOTION FOR NEW TRIAL
Following his conviction, the defendant filed a motion for new trial arguing that the denial of the motion for continuance caused prejudicial error. The trial court denied the motion for new trial and the defendant now appeals that ruling.
The decision on a motion for new trial rests within the sound discretion of the trial judge, and his ruling will not be disturbed on appeal absent a clear showing of abuse. State v. Quimby, 419 So.2d 951 (La.1982); State v. McLemore, 26,106 (La.App.2d Cir. 06/24/94), 640 So.2d 847, writ denied, 94-1908 (La.12/09/94), 647 So.2d 1107, cert. denied ___ U.S. ___, 115 S.Ct. 1974, 131 L.Ed.2d 863 (1995). The merits of such a motion must be viewed with extreme caution in the interest of preserving the finality of judgments. As a general rule, a motion for new trial will be denied unless injustice has been done. La C.Cr.P. art. 851; State v. McLemore, supra.
The issues surrounding the motion for a continuance, examined above, present no reversible error. Therefore, the trial court did not err in refusing to grant the defendant a new trial. This assignment of error is without merit.

GRUESOME PHOTOGRAPHS
At trial, the defendant objected to the entry into evidence of two photographs of the victim on the grounds that the photographs were unduly prejudicial and their probative value was far outweighed by their prejudicial effect.
At trial, one photograph of the victim's body was introduced into evidence without objection. This photograph, S-8, is a frontal view of the victim's unclothed torso. The victim's stomach is distended from internal bleeding and the entrance wound is visible in the middle of the torso. The view of the wound is somewhat blurry. Also partly visible in this photograph are paper bags covering the victim's hands. The defendant objected to the introduction of two additional *1062 photographs, S-10(A) and S-13(A), arguing that they provided no additional evidence than that provided in S-8.
The first disputed photograph, S-10(A), was taken by Ouachita Parish Coroner's Office Investigator Todd Sylvester. This photograph shows the victim's body lying on an emergency transport board. The victim, except for her face and right hand, is covered by a white sheet. The photo shows tubes inserted in the victim's nose and mouth; several drops of what appear to be blood are visible on the victim's face and on the board. Also visible in the photo are parts of the victim's clothing and a paper bag wrapped around the victim's right hand.
The second photograph, S-13(A), was taken by Dr. Stephen Hayne, the forensic pathologist who performed the autopsy on the victim. This photograph is a close-up of the entrance wound to the victim's abdomen. There is little if any blood in the photograph, but it shows a circular pattern of bruises and discoloration around the wound.
In the recent case of State v. Eddie Mitchell, Jr., 94-2078 (La.05/21/96), 674 So.2d 250, the Louisiana Supreme Court stated:
Photographs are generally admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing or place depicted. State v. Landry, 388 So.2d 699 (La.1980). Post-mortem photographs of murder victims are admissible to prove corpus delicti, to provide positive identification of the victim, to corroborate other evidence establishing cause of death, the manner in which death occurred, and the location, placement, and severity of wounds. State v. Bourque, 622 So.2d 198, 236 (La.1993). The mere fact that a photograph is gruesome does not in and of itself render a photograph inadmissible. The admission of gruesome photographs is not reversible error unless it is clear that their probative value is substantially outweighed by their prejudicial effect. State v. Martin, 93-0285 (La.10/17/94), 645 So.2d 190, 198.
The trial court admitted S-10(A), stating that the photograph showed the bags on the victim's hands. Although S-8 also shows that the victim's hands were covered by paper bags, S-10(A) provides a clearer view of the way the bag is attached to the victim's arms. While the view of the paper bag is duplicitous in part, neither the small amount of blood nor the medical apparatus attached to the victim is particularly gruesome. In short, the photograph does not support defendant's contention that the photo's probative value is substantially outweighed by its prejudicial effect.
Although S-13(A) depicts some of the victim's internal tissues, it is clearly more probative than prejudicial. Dr. Hayne described the victim's wound as a contact wound, meaning that the muzzle of the gun was pressed against the victim when the shot was fired. The defendant initially told police that the gun was approximately 14 inches from the victim when the shot was fired. The determination of this distance is probative on the issues of the defendant's credibility and the dynamics of the incident.
The doctor testified that contact gunshot wounds are characterized by an abrasion ring around the skin surface at the entrance and by visible powder residue in the wound channel. Dr. Hayne testified that the photograph shows the skin surface abrasion and actual powder residue in the wound tract. Thus, the photograph explains and confirms the doctor's theory that the muzzle of the gun was against the victim's body when the shot was fired. The photo admitted without objection, S-8, is too distant and fuzzy to clearly show whether the wound has either of the characteristics that support or refute the doctor's conclusion. Whatever prejudicial effect the photo may have is greatly offset by its probative value and the trial court did not err by refusing to exclude it on that ground. This assignment of error is without merit.

AUTOPSY REPORT
The defendant argues that the trial court erred in admitting into evidence the entire autopsy report, because only a portion of the contents was relevant and/or material to the state's case. At trial, the defendant contended that only the first page of the autopsy report, wherein the cause of death was stated, *1063 should have been admitted into evidence. The defendant contends that the remaining details of the entire autopsy were unnecessary and gruesome and were unduly prejudicial, with the probative value far outweighed by the resulting prejudicial effect.
The court admitted the report over this objection. The report indicates that the gunshot wound was a contact and penetrating wound. It also describes the appearance and condition of the victim's clothing and notes that the victim's shirt was retained as evidence. The report also describes the physical characteristics of the wound in detail, indicating that the entrance gunshot wound is surrounded by an abrasion ring and dense powder residue is identified in the wound tract. This section of the report also describes the trajectory of the bullet as it passed into the victim's body and indicates which vital organs were damaged by the bullet.
Another section of the report describes the use of a gunshot residue kit on the victim's hands. The bulk of the report describes in detail the condition of the other major organ systems of the victim's body. These sections are written in what is often abstruse, technical medical terminology.
Relevant evidence is any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. La. C.E. art. 401. The trial court is vested with wide discretion in determining relevancy of evidence and its ruling will not be disturbed on appeal in absence of clear showing of abuse of discretion. State v. Butler, 25,563 (La.App.2d Cir. 1/19/94), 631 So.2d 22. Similarly, the trial court has great discretion in assessing the probative value of evidence. State v. Sanford, 27,268 (La.App.2d Cir. 8/23/95), 660 So.2d 555, writ denied, 95-2570 (La.02/09/96), 667 So.2d 527.
The defendant has failed to show that the trial court erred by admitting the entire autopsy report. The report refers to several details described above which are relevant to issues before the fact finder. The remaining portions of the report, while of limited relevance, are written in a dry, technical style that is in no way gruesome. Considering the wide discretion of the trial court in such matters and no showing of prejudice, the defendant has failed to demonstrate reversible error by the admission of this report. This assignment of error is without merit.

SUFFICIENCY OF EVIDENCE
The defendant argues that the evidence against him was insufficient to support the verdict of second degree murder.[1] In support of this assertion, the defendant cites several facts which he argues show that the circumstances of the shooting were inconsistent with an intent to kill or cause great bodily harm. These arguments are without merit.
Specific criminal intent is defined as "... that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific criminal intent need not be proven as a fact, but may be inferred from the circumstances and the actions of the defendant. State v. Maxie, 93-2158 (La.4/10/95), 653 So.2d 526; State v. Johnson, 27,522 (La.App.2d Cir. 12/6/95) 665 So.2d 1237; State v. Owens, 606 So.2d 876 (La.App. 2d Cir.1992).
All that is necessary is that the defendant form the specific intent to kill or inflict great bodily harm for an instant when committing the crime. State v. Williamson, 27,871 (La.App.2d Cir. 4/3/96), 671 So.2d 1208. The determination of whether the requisite intent is present in a criminal case is a question for the trier of fact. State v. Owens, supra; State v. Johnson, supra; State v. Butler, 618 So.2d 572 (La.App. 2d Cir.1993), writ denied, 624 So.2d 1226 (La.1993). Though intent is a question of fact, it need not be proven as a fact; it may be inferred from the circumstances of the transaction. State v. Sepulvado, 93-2692 (La.04/08/96), 672 So.2d 158.
*1064 In reviewing the correctness of such a determination, the court should review the evidence in the light most favorable to the prosecution and must determine whether the evidence is sufficient to convince a reasonable trier of fact of the defendant's guilt beyond a reasonable doubt as to every element of the offense. La.C.Cr.P. art. 821; Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Johnson, supra; State v. Butler, supra. This standard of appellate review applies to all evidence, direct and circumstantial. State v. Owens, supra.
In support of his argument that the shooting was accidental and that he did not have the requisite specific intent to kill or cause great bodily harm, the defendant cites the testimony of Crystal Taylor, the victim's sister, who said that she did not hear the defendant and victim arguing immediately before the shooting. This witness also had not seen the two fighting before the shooting. Further, Ms. Taylor testified that, when she entered the victim's room, the defendant was performing CPR on the victim and looked "shocked or something." The defendant also argues that his flight from the scene was not indicative of consciousness of guilt but was instead an effort to escape the "animosity" of the victim's sister, Crystal Taylor.
Ms. Taylor testified that she did not hear the defendant and victim arguing immediately before the shot was fired. However, the state did not need to prove that the shooting resulted from an ongoing argument. It isn't clear from the testimony how the defendant got into the victim's bedroom, but Crystal Taylor testified that she thought the defendant had left the house because she heard the front door open and close after he walked away. The defendant could simply have quietly reentered the victim's room and shot her before she knew what was happening. The absence of an ongoing argument does not make this plausible scenario less likely. Similarly, the witness' testimony that she had never seen the couple physically fighting does not tend to prove that the defendant did not intend to kill the victim. It may only prove that the couple never fought around the witness. Ms. Taylor said that she had heard the defendant threaten the victim about a month prior to the shooting. She testified that the defendant told the victim that if he "ever caught her doing anything" he would hurt her. Another witness, Mrs. Davis, testified that she had seen the couple physically fighting shortly before the shooting.
Regarding the defendant's flight from the scene after the shooting, the implications of the defendant's behavior were a matter for the jury to decide. For the jury, the evidence that the defendant appeared "shocked" and tried to perform CPR on the victim may have been counteracted by his questioning of Crystal Taylor about why she called the police. The defendant testified at the trial and was able to fully present his version of the incident to the jury. Contrary assertions about the meaning of his actions are a matter of credibility left to the finder of fact. Further, Crystal Taylor said that the defendant did not flee the scene until the police arrived, creating the permissible inference that the flight was not due to Ms. Taylor's "animosity" towards him but was attributable to consciousness of guilt.
In support of his argument that the evidence against him was insufficient to support his conviction, the defendant also cites an alleged inconsistency between the testimony of the forensic pathologist and a police investigator. As noted above, the pathologist, Dr. Hayne, opined that the muzzle of the gun was against the victim's body when the shot was fired. However, David Yates, the criminalist who examined the victim's clothing for gunshot residue, stated that a gun fired at close range should leave residue on a shirt. The victim's shirt contained an insufficient amount of residue to determine the shooting distance. Mr. Yates testified that he would expect to see gunpowder residue on the clothing of a victim shot at close range sufficient to perform a distance test. But, as he explained, there are "many reasons" why such residue may not be present. The following colloquy is illustrative:
Q (Defense counsel): If someone wasn't careful with the shirt [of the victim] and handled this shirt, looking through it, even looking for the bullet hole, setting it on the *1065 table, looking in the bag, rubbed the area around the bullet hole, would that possibly remove some of the residue?
A (Yates): Yes, it could. Yes.
As may be seen from the photographs of the victim, the preservation of evidence on the victim's clothing apparently was a secondary concern to treating her wound. One may see that her clothing is in disarray and police did not attempt to collect evidence from the body until after the victim was pronounced dead. Moreover, it appears that the victim's clothes had been cut away to facilitate treatment. At any rate, the criminalist testified that, because of the absence of residue, he had no opinion about the distances involved. This testimony is not contradictory to that of the pathologist. As discussed earlier, Mr. Yates' test results concerning gunshot residue on the shirt were merely inconclusive and served neither to prove nor disprove the defendant's guilt or innocence.
Further arguing that the evidence was insufficient upon which to base his conviction, the defendant cites the testimony of two state witnesses who indicated that it was possible for the defendant's gun to be inadvertently cocked, which would greatly lighten the trigger pull, and then "go off" when passed butt first from one person to another. Persons familiar with the operation of firearms testified at length about the manner in which the defendant's gun could be fired. Mr. Yates testified that the weapon had a hammer-block safety which prevents the weapon from firing unless the trigger is pulled. Officer Fried who indicated that it was "quite possible" for the gun to go off when it was handed butt first from person to person, was not qualified as a firearms expert, a factor relevant to the jury's decision of the weight to be accorded his testimony. The evaluation of the weight and credibility of the testimony regarding this issue was a proper function of the finder of fact.
The factors cited by the defendant in support of his argument that the evidence against him is insufficient to support his conviction primarily involve credibility determinations and other matters squarely within the province of the jury. No piece of physical evidence clearly disproves the state's theory that the defendant intended to shoot the victim, and the bulk of the evidence supports that theory. Considering all the circumstances of the shooting in conjunction with the physical evidence, and considering the inconsistencies in the defendant's account concerning the location of the gun in the room prior to the victim's injury and what he did with the gun after the shooting, the jury was not unreasonable in finding the defendant guilty of second degree murder.

ERROR PATENT
We have reviewed the record for error patent and note two such errors which require correction. However, neither of these errors requires reversal. The record does not reflect that the defendant was notified of the prescriptive period for post-conviction relief contained in La.C.Cr.P. Art. 930.8. The district court should be directed to send written notice of this period to the defendant within 10 days of the rendition of this opinion and to file proof of defendant's receipt of this notice into the record. State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992).
The record also does not reflect that the defendant was given credit for time served. He is entitled to this credit pursuant to La. C.Cr.P. Art. 880.

CONCLUSION
For the reasons set forth above, we affirm the second degree murder conviction of the defendant, Kedrick O'Neal Henderson and his sentence to life imprisonment without benefit of parole, probation or suspension of sentence.[2]
AFFIRMED.
NOTES
[1] The defendant properly raised this issue in a motion for post verdict judgment of acquittal which was denied by the trial court. La.C.Cr.P. art 821.
[2] Although the transcript and minutes reflect that the defendant was properly sentenced to life imprisonment without benefit of parole, probation or suspension of sentence, the judgment dated March 22, 1996 erroneously states that the defendant pled guilty as charged and contains a typographical error omitting the provision that the sentence to life imprisonment be served without benefit.