715 So.2d 101 (1998)
STATE of Louisiana, Appellee,
v.
David H. CLOWER, Sr., Appellant.
No. 30745-KA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1998.
Louisiana Appellate Project by Richard J. Gallot, Jr., Ruston, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, Assistant District Attorney, for Appellee.
Before NORRIS, HIGHTOWER and PEATROSS, JJ.
HIGHTOWER, Judge.
After a unanimous jury convicted him of felony theft, La. R.S. 14:67(B)(1), David Clower, Sr. pled guilty to a second-felony habitual offender bill (charging an earlier conviction of Theft by Fraud) in exchange for an agreed-upon sentence of ten years at hard labor. Following the denial of a timely Motion for Post-Verdict Judgment of Acquittal, defendant appeals to urge the insufficiency of the evidence. We affirm.

FACTS
Charges against Clower arose from his posing as a representative of either the Caddo Parish Sheriff's Office ("CPSO") or drug organizations affiliated with that office to *102 solicit funds from numerous Shreveport businesses for the publication of an anti-drug booklet. He never published the booklet, nor did he make any effort to return the monies solicited.
The evidence shows that CPSO is involved in a number of programs designed to combat drug abuse, including the Drug Abuse Resistance Education ("D.A.R.E.") program, and distributes free-of-charge a booklet, published by L.A.W. Publications, entitled "Let's All Work To Fight Drug Abuse." L.A.W. Publications is not affiliated with D.A.R.E., but provides the leaflet to CPSO without cost.
This publication displays an array of educational information demonstrating the dangers of drug abuse, along with numerous complementary advertisements by Caddo Parish businesses. The front of the brochure bears letters from the Caddo Parish sheriff, Don Hathaway, and the Shreveport chief of police, thanking contributors and explaining the booklet's purpose as the education of youth.
In 1993, Sergeant Philip Escude, then CPSO drug education public relations officer, supervised implementation of the D.A.R.E. program and distributed the L.A.W. booklets. Sometime that year, Clower visited Escude's office to speak with him concerning drugs in the area and his desire to produce a drug education booklet for free distribution by the CPSO. Escude gave defendant a copy of the L.A.W. booklet, believing that it might contain beneficial information on guidelines or format. He also provided Clower one of his business cards bearing the logos of the CPSO and D.A.R.E., but never authorized defendant to solicit money for a publication on behalf of either group.
During late 1993 and early 1994, Clower solicited funds from various businesses[1] in the Caddo-Bossier area, generally claiming as his purpose the publication of an anti-drug booklet for the Sheriff's Office or indicating his affiliation with L.A.W. or D.A.R.E. Publications. Offering advertising space in exchange for financial support, he issued receipts for the money in the name of Affiliated Services.
On May 5, 1994, a local liquor store informed CPSO Sergeant Larry Wise that an individual had contacted that establishment to solicit funds for a CPSO anti-drug magazine. Upon learning that CPSO had not authorized such a project, Wise obtained the person's description. Further investigation disclosed the names of the defendant and his company.
A few days later, Clower met with Wise and Escude in the investigator's office. He presented his receipt books, Escude's business card, and reproductions of part of the L.A.W. booklet, including a copy of Hathaway's photo. Wise suspended further investigation, however, when Clower stated his intent to reproduce a drug education booklet by September 15. Escude instructed Clower not to solicit funds on behalf of the CPSO or through use of the CPSO logo.
In September, with still no indication that a brochure had been published, Wise acted through an assistant district attorney to obtain the release of defendant's financial records despite Clower's insistence that he had nothing to hide. The ongoing examination eventually spanned documents from September 1993 to January 1995. Defendant cooperated fully with the investigators and, at their last meeting, continued to maintain that he would print the booklet. He never did, however.
As revealed by his records, defendant used his bank account for both personal and company matters. ATM withdrawals, together with checks written to automobile repair businesses, local bars, grocery markets, and a liquor store, nearly equaled the total deposits. Bank reports also showed a regular pattern of large cash deductions, some appearing as "less cash" from deposits of the checks written by the solicited businesses.
Based upon this information, the state charged defendant on June 28, 1995. Trial occurred almost ten months later.

*103 DISCUSSION
In his two assignments of error, defendant argues that the state did not sufficiently show his intent to deprive the contributors permanently of their money.
The criterion for evaluating sufficiency is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational fact-trier could find that the state proved all elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Washington, 597 So.2d 1084 (La.App. 2d Cir.1992). That standard, initially enunciated in Jackson and now legislatively embodied within La.C.Cr.P. art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983); State v. Perry, 612 So.2d 986 (La.App. 2d Cir.1993).
Of course, it is always the function of a judge or jury to assess credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir. 1992), writ denied, 617 So.2d 905 (La.1993). Where a trier of fact has made a rational determination, an appellate court should not disturb it. Id.; State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992). Indeed, in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the fact-trier, is sufficient support for the requisite factual conclusion. State v. Thomas, supra.
The crime of felony theft in the present matter required proof that, by means of fraudulent conduct, practices or representations, the defendant misappropriated or took another's property valued at five hundred dollars[2] or more. An intent to deprive the other permanently of whatever may be the subject of misappropriation or taking is essential. See La. R.S. 14:67.
The determination of whether the requisite intent is present in a criminal case is a question for the fact-trier. State v. Henderson, 28,932 (La.App.2d Cir. 12/11/96), 684 So.2d 1054, 1063. Though a question of fact, intent need not be proven as a fact but may be inferred from the circumstances of the transaction. State v. Sepulvado, 93-2692 (La.04/08/96), 672 So.2d 158.
Defense witness John Fertitta claimed to have accompanied Clower on visits to printing companies for the purpose of getting prices and layouts for a book. Noting that testimony and citing State v. Crosby, 515 So.2d 570 (La.App. 1st Cir.1987), as "basically standing" for the legal proposition that "affirmative acts evidencing [an] intent to ... complete the agreed upon `project' defeats a presumption of intent to defraud," defendant argues that the state failed to show sufficiently that he had no intent to produce a booklet and thereby to deprive the contributors permanently of their funds.[3]
The Crosby court, however, based its determination solely upon the circumstances of the transaction at issue there, which are clearly distinguishable from the case sub judice. We decline to extend that holding beyond those facts. Moreover, the assessment of Fertitta's credibility is the function of the jury. Not only that, even if defendant visited a printing company, the jurors may well have considered this as inconclusive as to intent or even an act designed to cover up his scheme.
The remaining evidence shows that Clower solicited funds from contributors, while posing as a representative of CPSO or affiliated organizations, and failed to ever produce the pamphlet. These actions, although alone possibly insufficient to prove the requisite intent to permanently deprive, cf. State v. Hoffer, 420 So.2d 1090 (La.1982), *104 must be considered with defendant's concomitant and subsequent behavior in never returning or offering to return the funds but, instead, spending the money. When so viewed, such conduct proved the intent element of felony theft to the exclusion of every reasonable hypothesis of innocence.
To at least one establishment, Clower falsely represented his authority to renew an advertisement in a booklet printed by an organization with which he had no affiliation. From that unsanctioned transaction alone, the jury could have reasonably concluded that he fraudulently intended to deprive the contributor of over $500.
Moreover, even at the time when he assured CPSO investigators of his intent to publish a new pamphlet, Clower had withdrawn as cash or otherwise spent the bulk of the collected funds on personal expenses, including bar tabs. Similarly, over the period of several months, and notwithstanding his claimed visits to printing shops, Clower spent no funds on publication or layout costs which might colorably be interpreted as steps toward the creation of the brochure. Nor did he ever make any visible effort to return the money. When examined in the light most favorable to the state, Clower's total conduct demonstrates beyond a reasonable doubt that he intended to deprive the businesses of their money permanently. The jury verdict is affirmed.

CONCLUSION
Accordingly, for the foregoing reasons, defendant's conviction is affirmed.
AFFIRMED.
NOTES
[1] Representatives of nine of those businesses testified for the state regarding defendant's solicitation of their establishments.
[2] The number of alleged distinct acts are aggregated to determine the grade of the offense. La. R.S. 14:67(C).
[3] Defendant also cites State v. Crosby, supra, for the proposition that the state must prove that an "intent to defraud" existed at the time the possession of the allegedly stolen object began. The cases cited by Crosby are hardly persuasive on that point, however, nor does La. R.S. 14:67 specify any such requisite. See also State v. Langford, 483 So.2d 979, 985 (La.1986), indicating that one who changes his mind after the taking, and decides not to return the property, may nonetheless be guilty under Louisiana's broadly sweeping theft statute.