792 So.2d 782 (2001)
STATE of Louisiana, Plaintiff-Appellee,
v.
Arthur STILLS, Defendant-Appellant.
No. 34,740-KA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2001.
*784 John M. Lawrence, Counsel for Defendant-Appellant.
Richard Ieyoub, Attorney General, James M. Bullers, District Attorney, Whitley R. Graves and Carl L. Ekendahl, Assistant District Attorneys, Counsel for Plaintiff-Appellee.
Before NORRIS, CARAWAY and KOSTELKA, JJ.
NORRIS, Chief Judge.
Arthur Stills appeals his conviction of attempted first degree robbery and sentence of five years imprisonment at hard *785 labor without benefit of parole, probation or suspension of sentence. We affirm.

Facts
Herlinda Carter was working as the clerk of the drive-through window at Whataburger on Benton Road in Bossier City, Louisiana, on May 26, 1999. At about 2:15 a.m., Stills entered the drive-through lane, ordered some food, and drove up to the drive-through window. Carter recognized Stills because they had had a brief relationship some months earlier.
After Carter handed Stills his drink, he asked her to change it because he didn't like its taste. Carter changed the drink and leaned down to hand him the bag of food. Stills paid for his order, then handed the bag of food back to Carter and asked for more napkins. Carter took back the bag of food, complied with the request and returned the bag to Stills.
During the exchange, Carter saw that Stills' female companion, Yolanda Veal, was grinning. She also saw Stills was holding something under his shirt that resembled a gun and which he appeared to be loading with bullets or a clip. Carter called to her manager, Cynthia Palmer, and told her something was wrong with her printer. Palmer had already noticed the excessive verbal exchanges with Stills and went to the window area to check on the problem. Stills handed the bag back three more times, requesting salt, pepper and ketchup. After each request, Carter took the bag of food, complied with the request and returned the bag to Stills. Palmer heard Carter repeatedly tell Stills that if she gave him any more condiments, she would get into trouble. Palmer noted that Carter smiled and was polite to Stills. Palmer could tell that Carter was trying to keep Palmer at the window, but Palmer had to return to the cooking area when the alarm on the cooking equipment indicated that some fried food was ready.
After Palmer left the window area, Stills pointed a big black gun in the window and told Carter, "Yeah, you come here and give me all the money in the cash register." Carter heard a "click" sound when Stills put the gun in the window. Palmer also clearly heard the "click," which sounded to her like a gun clip or a trigger being pulled. Carter ran away from the window and Stills sped away; Palmer called the police.
On the basis of the description and information given by Carter and Palmer, police officers located Stills at his grandmother's house. Officer Ronnie Gene Sellers, Jr. noted that the hood of Still's car was still hot and noticed a Whataburger cup on the floorboard; the cup was on its side and ice was spilled on the floor. Stills told Officer Sellers that he had just been to Whataburger with his girlfriend. Stills was placed under arrest, and Officer Sellers, with permission from Stills' grandmother, searched the common area of the residence. A Whataburger bag and cup were found on a sofa, but no gun was found. Stills told Officer Todd William Hilbert that he did not have a gun or anything that resembled a gun in his car; a search of the white Cadillac and the area outside the Whataburger did not produce a gun.
At trial, Stills testified that he and Carter had a previous relationship, dating on and off for about three or four months. He asserted that he had sex with Carter about four or five times, and that they knew each other's full names; Carter testified that she knew Stills only by his nickname, "Big Toe." Stills insinuated that Carter became jealous at seeing him with his new girlfriend. Carter testified that she and Stills never officially dated, never had a relationship, and only slept together once. Carter stated that she saw Stills on *786 a daily basis because they lived in the same area.
Stills corroborated that he asked Carter to change his drink, and then asked for napkins, salt and pepper. However, Stills asserted that Carter looked into his car and asked who that "ho" was in the car with him. Stills asked Carter for a cup of water for Veal; Carter handed the cup of water to him in such a way that it tipped over into his car and spilled. Stills then grabbed his son's toy gun from the floor mat and was "aiming to chunk it at her" when Carter ran away from the window. Stills indicated that he waited at the drive-through window for about ten minutes so he could tell the manager about Carter throwing the water. However, he and Veal began arguing about whether Carter called her a "whore" and he pulled off. Stills stated that he tossed his son's toy gun and other toys down in or near his grandmother's house.
During the investigation, Stills told Officer Hilbert about a girl named Yolanda but never told him her last name and was unclear and inconsistent regarding Veal's whereabouts after the crime and where she lived. Officer Hilbert never located or interviewed Veal; however, she did testify at trial. Veal basically corroborated Stills' story. Veal stated that although Carter had a smile on her face, she was rude to them. Veal testified that she did not hear Stills demand any money or point a gun at Carter. Veal stated that after Carter threw the cup of water in the car, Stills grabbed a toy gun from the floor and told Carter, "Bitch you leave me alone." However, Carter was already away from the window.
Stills was convicted as charged of attempted first degree robbery and was sentenced to serve five years at hard labor without benefit of parole, probation or suspension of sentence. He appeals his conviction and sentence.

Law and Analysis
The criterion for evaluating sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational fact-trier could find that the state proved all elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687; State v. Clower, 30,745 (La.App.2d Cir.06/24/98), 715 So.2d 101. That standard enunciated in Jackson and legislatively embodied within La.C.Cr.P. art. 821 is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983); State v. Perry, 612 So.2d 986 (La.App. 2d Cir.1993).
It is always the function of the jury to assess credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (1993). Where a trier of fact has made a rational determination, an appellate court should not disturb it. Indeed, in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for the requisite factual conclusion. Id.; State v. Ervin, 32,430 (La. App.2d Cir.9/22/99), 747 So.2d 109, writ denied, XXXX-XXXX (La.4/20/00), 760 So.2d 342; State v. Clower, supra; State v. Combs, 600 So.2d 751 (La.App. 2d Cir.), writ denied, 604 So.2d 973 (1992).
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La.1975); State v. Maxie, 30,877 (La.App.2d Cir.8/19/98), 719 *787 So.2d 104; State v. Dean, 528 So.2d 679 (La.App. 2d Cir.1988).
The essential elements of an attempted first degree robbery are (1) that defendant committed an act in furtherance of committing a robbery, (2) that defendant used force or intimidation, and (3) that defendant lead his victim to reasonably believe he was armed. La. R.S. 14:64.1, 14:27; State v. Nelson, 518 So.2d 518 (La.App. 3d Cir.1987).
The statute regarding first degree robbery has objective and subjective components. It requires the state to prove that the offender induced a subjective belief in the victim that he was armed with a dangerous weapon, and that the victim's belief was objectively reasonable under the circumstances. The statute thus excludes unreasonable panic reactions by the victim but otherwise allows the victim's subjective beliefs to determine whether the offender has committed first degree robbery or the lesser offense of simple robbery in violation of La. R.S. 14:65. State v. Fortune, 608 So.2d 148 (La.1992). Direct testimony by the victim that the victim believed the defendant was armed, or circumstantial inferences arising from the victim's immediate surrender of his personal possessions in response to the defendant's threats, may support a conviction for first degree robbery. Id.; La. R.S. 14:64.1(A).
Stills argues that the State did not prove beyond a reasonable doubt that he was guilty of attempted first degree robbery.[1] Stills alleges that the incident was merely the result of Carter wanting revenge on him because he had another girlfriend. Stills and Veal both testified that Stills never demanded money and only got angry after Carter threw a cup of water at them. They also testified that Stills picked up a toy pistol, planning on throwing it at Carter. Notably, Veal testified that Carter had already run away before Stills had picked the toy up. Additionally, Stills never informed any of the investigating officers about the toy pistol or that Carter had thrown water at him and Veal. Both Stills and Veal testified that the incident did not last very long and Veal testified that no other customers were waiting to be served.
Carter testified that Stills repeatedly requested napkins and additional condiments in an apparent attempt to keep her at the window. She stated that Stills remained at the window for an extended time and that several customers were waiting in line behind him. Carter stated that Stills pointed a black gun at her and she heard a "clicking" sound; Carter ran from the window out of fear for both herself and her unborn child because she believed that Stills had a real weapon. Palmer also testified that Stills remained at the drive-through window an inordinate amount of time; she was concerned about the area and listened to the conversation because there was a long line that had formed. Palmer testified that she had to give away several meals to angry customers who had been kept waiting. Palmer also heard the "click" that sounded like a gun being cocked. Additionally, Palmer testified that Carter never got angry or belligerent toward Stills, directly contradicting the testimony that she was rude.
*788 The jury heard testimony from Carter, Palmer, Stills, and Veal and made reasonable credibility determinations. The evidence was sufficient to form a factual basis for the jury to find that the state proved all of the elements of the crime of attempted first degree robbery beyond a reasonable doubt. The jury's findings were rational. This assignment is without merit.

Excessive Sentence
Stills challenges his sentence as excessive. The test imposed by the reviewing court in determining the excessiveness of sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983).
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985).
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, we will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
There is no minimum sentence for attempted first-degree robbery. State v. Patrick, 31,380 (La.App.2d Cir.10/28/98), 721 So.2d 94, writ denied, 98-2957 (La.3/19/99), 739 So.2d 780. The maximum sentence is imprisonment at hard labor for more than 20 years without benefit of parole, probation or suspension of sentence. Id.; La. R.S. 14:64.1, 14:27.
The sentencing record shows that the trial court adequately considered the criteria set forth in La.C.Cr.P. art. 894.1. Stills' sentence memorandum was considered, as well as his pre-sentence investigation report. The trial court particularly noted that Stills has three children.
Stills' sentence of five years imprisonment at hard labor without benefit was only one-fourth of the maximum possible sentence for his conviction of attempted first degree robbery. Stills had numerous prior arrests, and prior convictions for attempted felony theft and trespassing on government property. He used his prior sexual encounter with Carter as an opportunity to harass and intimidate her at her place of work in an attempt to get money. His action in demanding money from Carter and leading her to reasonably believe that he had a gun pointed at her was particularly threatening and frightening for Carter, considering her pregnancy. Viewed in light of the harm done to society, Stills' five-year hard labor sentence for this crime does not shock the sense of consciousness. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864. Furthermore, the sentence does not appear grossly out of proportion to the seriousness of the offense, nor nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, supra. This assignment is therefore without merit.

Error Patent
Our review of the record shows that although the trial court advised Stills *789 of the two-year prescriptive period for filing an application for post-conviction relief, the court did not state that this period begins to run when the judgment is final under La.C.Cr.P. art. 914 or 922. Stills should have been advised by the trial court, and is now advised by this court's opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. arts. 914 or 922. See State ex rel. Glover v. State, 93-2330 (La.9/5/95), 660 So.2d 1189. We find nothing else we consider to be error patent.

Conclusion
Stills' conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] In brief, counsel refers to the crime as attempted armed robbery, an error which also occurs in one place in the court minutes and on the reverse side of the bill of information. However, all other documents and transcripts show the offense was attempted first degree robbery. Any potential error in the bill is purely technical, La.C.Cr.P. art 464, 487A, and not reversible error. State v. Cox, 474 So.2d 523 (La.App. 3d Cir.1985), writ granted in part on other grounds, otherwise denied, 481 So.2d 1328 (1986).