h GASKINS, J.
The defendant, Timothy Wisely, was originally indicted for first degree murder and armed robbery. Following a bench trial on the amended charge of second degree murder, he was convicted of manslaughter and sentenced to serve 40 years imprisonment at hard labor. The defendant’s conviction and sentence are affirmed.
FACTS
On December 26, 1997, the victim, David Solomon, was at a small party in honor of his birthday. Among those present at the party were Danny Wilkins, Dennis Wilkins, and the defendant. At one point in the evening, the victim left with the defendant and the two Wilkins brothers to go to a nearby store to buy more beer. After purchasing the beer, the four men traveled in the defendant’s car to a secluded spot in the rural woods of DeSoto Parish, ostensibly to go deer hunting. The victim complained repeatedly that he wanted to go home. Dennis Wilkins and the defendant walked off a short distance. When they rejoined the others, Dennis Wilkins pointed a shotgun at the victim. When the victim retreated into the car, Dennis Wilkins ordered him to get out of the vehicle and kneel down.
Initially the victim complied. However, he and Dennis Wilkins exchanged words, and at some point the victim stood up. While the victim was standing, Dennis Wilkins shot him in the chest. As he lay on the ground bleeding, the victim reached into his pockets and threw his money, about $400, on the ground. Dennis Wilkins then asked the defendant if he wanted “to do it,” to kill the victim. The defendant said that he would. He loaded the shotgun and shot the victim in the head. The defendant and Dennis Wilkins dragged the victim’s body into the woods in an effort to conceal it. After picking up the victim’s money and the beer cans they had dropped on the ground at the crime scene, the three men went to a truck stop to purchase gasoline and some snacks. When the defendant and Danny | ¡Wilkins dropped off Dennis Wilkins, Dennis gave each of the other men $100 of the victim’s money.
In the days following the murder, the three men attempted to conceal evidence connecting them to the crime. They destroyed or got rid of the shoes they were wearing when they killed the victim. They also changed the tires on the defendant’s car so that the police would not be able to match them to the tracks at the crime scene. The defendant and Danny Wilkins cleaned the murder weapon and hid it under a log at the defendant’s camp.
Several days later, a missing persons report on the victim was filed with the DeSoto Parish Sheriffs Office. After *1232 learning that the victim had last been seen in the company of the defendant and the Wilkins brothers, the authorities questioned Danny Wilkins. Post-Mmmda, Danny Wilkins informed them of the victim’s murder. In his statement, Danny Wilkins told officers that the defendant fired the fatal shot. (This statement was consistent with the trial testimony given by both Wilkins brothers.) He provided the police with a map showing the location of the body , and accompanied them to the site where the murder weapon was hidden.
A DeSoto Parish grand jury filed indictments charging all three men with first degree murder and armed robbery. The state filed notice of its intent to seek the death penalty.
Danny Wilkins entered a plea agreement whereby he pled guilty to the offense of accessory after the fact to second degree murder and conspiracy to commit armed robbery. He received agreed-upon concurrent sentences of five years at hard labor on the accessory charge and seven years at hard labor without benefit of parole, probation or suspension of sentence on the conspiracy charge. Likewise, Dennis Wilkins pled guilty to manslaughter and armed robbery, receiving concurrent sentences of 40 years at hard labor for manslaughter and 50 years at hard labor, without benefit, for armed robbery.
|sThe state amended the first degree murder charge against the defendant to second degree murder. After the defendant waived his right to a jury trial, a bench trial was held on the charge of second degree murder. The defendant was convicted of the responsive verdict of manslaughter and sentenced to 40 years at hard labor.
SUFFICIENCY OF EVIDENCE
In his first assignment of error, the defendant urges that the evidence presented at trial was insufficient to support a finding of guilty to the offenses of second degree murder or manslaughter.
In State v. Barrett, 33,076 (La. App.2d Cir.3/1/00), 756 So.2d 576, in discussing sufficiency of evidence, this court recently stated:
The criterion for evaluating sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational fact-trier could find that the state proved all elements of the crime beyond a reasonable doubt. Jackson [v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ]; State v. Clower, 30,745 (La.App.2d Cir.06/24/98), 715 So.2d 101. That standard, initially enunciated in Jackson and now legislatively embodied within La. C. Cr. P. art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Perry, 612 So.2d 986 (La.App. 2d Cir.1993).
All evidence, both direct and circumstantial,. must be sufficient under the Jackson [sic] standard to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985); State v. Arrington, 514 So.2d 675 (La.App. 2d Cir.1987); State v. McKnight, 539 So.2d 952 (La.App. 2d Cir.1989), writ denied, 548 So.2d 322 (La.1989).... Where a trier of fact has made a rational determination, an appellate court should not disturb it. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for the requisite factual conclusion. State v. Clower, supra; State v. Thomas, [609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993) ]; State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
Second degree murder is defined, in pertinent part, as “the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.” |4La. R.S. 14:3o.!.[1] Specific intent *1233 is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. McCray, 621 So.2d 94 (La.App. 2d Cir.1993). Specific intent need not be proven as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.1989), writ denied, 544 So.2d 398 (La.1989).
The evidence, viewed in the light most favorable to the prosecution, reveals that the defendant possessed the specific intent to kill the victim. The defendant pointed the shotgun at the victim’s head and pulled the trigger. (While unable to determine the exact distance between the defendant and the victim, the coroner characterized this as a “near” wound.) The defendant’s act of pointing a gun at the victim’s head while firing it is evidence from which a reasonable person could conclude that he had a specific intent to kill. State v. Robinson, 32,794 (La.App.2d Cir.3/1/00), 754 So.2d 311; State v. Guy, 95-0899 (La.App.4th Cir.1/31/96), 669 So.2d 517, writ denied, 96-0388 (La.9/13/96), 679 So.2d 102. In State v. Stringfellow, 28,074 (La.App.2d Cir.5/8/96), 674 So.2d 1036, this court stated that the firing of buckshot from a shotgun at fairly close range was alone sufficient evidence of specific intent to kill or inflict great bodily harm for a second degree murder conviction.
Manslaughter is a responsive verdict to second degree murder. La.C.Cr.P. art. 814. A factfinder may return any legislatively provided responsive verdict ^whether or not the evidence supports that verdict, as long as the evidence was sufficient to support a conviction of the charged offense. State v. Prince, 520 So.2d 778 (La.App. 3rd Cir.1987), writs denied, 522 So.2d 567 (La.1988); State v. Carrier, 95-1003 (La.App. 3d Cir.3/6/96), 670 So.2d 794, writ denied, 96-0881 (La.9/20/96), 679 So.2d 431; and State v. Jasper, 28,187 (La.App.2d Cir.6/26/96), 677 So.2d 553, writ denied, 96-1897 (La.2/21/97), 688 So.2d 521. Because there was sufficient evidence to convict the defendant of second degree murder, there was sufficient evidence to convict him of manslaughter, a responsive verdict.
This assignment of error is without merit.
EXCESSIVE SENTENCE
In his second assignment of error, the defendant argues that the sentence of 40 years, the maximum term for manslaughter, is excessive.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const, art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
The defendant was convicted of manslaughter. La. R.S. 14:31(B) mandates that whoever commits the offense of manslaughter be punished by imprisonment at hard labor for not more than 40 years. The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence *1234 should not be set aside as excessive m the absence of a manifest abuse of discretion by | r,the sentencing court. State v. Square, 433 So.2d 104 (La.1983); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983), writ denied, 439 So.2d 1074 (La.1983); State v. Walker, 573 So.2d 631 (La.App. 2d Cir.1991).
The defendant, along with two other men, drove the victim away from his birthday party and into the woods to murder him. After the victim had already been shot once, the defendant agreed to “do it,” to kill him. The defendant loaded the shotgun, pointed it at the victim’s head, and pulled the trigger. Afterwards, the defendant and his accomplices dragged the victim’s body into the woods, took his money, and left his body to decay. The defendant took home $100 for his part in the murder. He subsequently went to great lengths to conceal his role in the homicide by destroying or hiding evidence.
In light of these facts alone, the defendant’s sentence is not grossly disproportionate to the crime he committed. Moreover, the defendant’s presentence investigation (PSI) report also shows that his sentence is appropriate. The PSI report reveals the defendant’s extensive criminal history: notwithstanding the year 1999, he was arrested every single year from 1992 to 2000. His arrests included disturbing the peace, domestic violence, contributing to the delinquency of a minor, illegal possession of stolen things, simple criminal damage to property, and resisting arrest. In addition, even after the instant offense, the defendant was arrested in April 2000 for second degree battery; this charge was still pending when the PSI report was compiled.
In light of the defendant’s extensive criminal record, coupled with the facts of the instant offense, the sentence of 40 years imprisonment at hard labor for this senseless murder is not a purposeless and needless infliction of pain and suffering. It is justified and does not shock the sense of justice. We find no manifest abuse of discretion by the sentencing court.
Accordingly, this assignment of error is meritless.
| CONCLUSION
The defendant’s conviction and sentence are affirmed.
AFFIRMED.

. The second subsection of the second degree murder statute includes a killing without in *1233 tent when the offender is engaged in enumerated felonies. Since the facts support a finding of second degree murder under the intent to kill or inflict great bodily harm portion of the statute, we pretermit any discussion of the felony murder subsection.