Judgment rendered November 15, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,312-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

WILLIE DERRICK JACKSON                Appellant

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 75,590

Honorable Bruce E. Hampton, Judge

* * * * *

THE BURRELL FIRM, LLC                 Counsel for Appellant
By: Dwayne Burrell

CLAUDIA A. PAYNE

JOHN F.K. BELTON                      Counsel for Appellee
District Attorney

TRACY W. HOUCK
LEWIS ALLEN JONES
Assistant District Attorneys

* * * * *

Before PITMAN, STONE, and STEPHENS, JJ.

**PITMAN, C. J.**

The state charged Defendant Willie Derrick Jackson with second degree murder, and a jury convicted him of the responsive verdict of manslaughter. The trial court sentenced him to 17 years' imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. Defendant appeals his conviction. For the following reasons, we affirm his conviction, affirm as amended his sentence and remand to the trial court with instructions.

## FACTS

On May 20, 2021, the state filed a bill of indictment charging Defendant with second degree murder. It alleged that on or about March 15, 2021, Defendant committed the second degree murder of James Melton, in violation of La. R.S. 14:30.1. Defendant pled not guilty.

A jury trial began on May 26, 2022. Deputy Arthur Hoenke of the Lincoln Parish Sheriff's Office testified that on the night of March 15, 2021, he responded to a 9-1-1 call about a shooting at 436 Heard Road. A recording of the call, which was placed by Defendant, was played for the jury. During the call, Defendant stated that he shot someone inside his house and that he put the gun in his car. Dep. Hoenke resumed his testimony and stated that he was the first officer to arrive on the scene, and he observed Defendant standing on the side of the road with his hands up. He approached Defendant, handcuffed him and placed him in his unit. He then walked into Defendant's trailer, observed a black male slumped over on the couch, determined that the man did not have a pulse and secured the scene. He then drove Defendant to the sheriff's office.

Deputy Matthew Henderson of the Lincoln Parish Sheriff's Office testified that shortly before 8:30 p.m. on March 15, 2021, he responded to 436 Heard Road regarding a shooting. He entered the house and observed Melton sitting upright but slumped over on a couch. He described photographs of the scene, including of gunshot entrance and exit wounds to Melton's body, blood stains on the couch and bottles of alcohol. He explained that markings on Melton's leg suggested that he did not die instantly but first struck his leg on the table. Law enforcement recovered from Defendant's vehicle a six-shot .38 handgun with four fired casings and two intact rounds with firing pin strikes on them. Four bullets were recovered during the investigation—one on the couch, one within the couch cushion and two from Melton's body during the autopsy.

Dep. Henderson interviewed Defendant shortly before midnight on March 15, 2021, and a recording of the interview was played for the jury. Defendant stated that Melton was his neighbor, but they did not know each other. Defendant walked to his mailbox and saw Melton outside. Melton brought over a case of beer, they talked outside and listened to music and then went inside to continue listening to music and drinking alcohol. Defendant stated that Melton became intoxicated and aggressive, so Defendant asked him to leave and then went in his bedroom and got his handgun. Defendant stated that he dropped the gun on the floor. He recalled that Melton "reached for something" and "came at" him, so he shot him. He stated that Melton got back up and "kept coming at [him]," so he shot him again. He noted that when they were outside, Melton showed him that he had a knife, but law enforcement responded they did not find a knife at the scene. Defendant denied shooting Melton in the back or when he was

2

lying down on the couch. Law enforcement showed Defendant photographs depicting that Melton was shot in the back and told him that a bullet was found in the couch. Defendant again denied shooting Melton in the back.

Dr. James Belue, the Lincoln Parish coroner, testified that at the time of Melton's death, his blood alcohol content was .427. He noted that Melton's cause of death was multiple gunshot wounds, not his blood alcohol content.

Dr. Frank Peretti, a forensic pathologist, testified that he performed Melton's autopsy. He discussed photographs he took during the autopsy and detailed the gunshot wounds depicted in the photographs. He noted that the order the gunshots occurred could not be determined and stated that Melton was shot four times—once through his left arm, once in his upper right back and twice in his lower back. He stated that there was no evidence of close-range firing. Dr. Peretti considered photographs of the scene of the shooting and, noting that Melton was shot three times in the back, opined that he either pivoted after being shot in the arm or was leaning forward on the couch when he was shot. He testified that Melton's cause of death was multiple gunshot wounds because he bled to death internally. He noted that Melton's blood alcohol content was .427, which is a lethal amount for most people, but explained that people who have a high tolerance to alcohol could function at that level.

The state rested. Outside of the presence of the jury, the defense stated that it intended to offer into evidence a video of an intoxicated Melton "reciting music . . . and making different gestures" including "throwing gang signs . . . pointing guns." It explained that this video would show Melton had a habit of listening to rap music and making gestures and

3

gyrations. The trial court determined that the video was not admissible, and the defense objected. The defense stated that showing the video to a witness would lead to testimony that Melton "acts crazy" when he is intoxicated, which would establish a habit. The trial court responded that it would be unfairly prejudicial and irrelevant. The defense then proffered the testimony of Erica Melton, who stated that her brother occasionally acts crazy when intoxicated but that she never saw him become violent when drinking.

The defense also stated that it intended to introduce evidence that there was a hostile demonstration or overt act by Melton that allowed it to explore evidence of his character. It explained that in his interview with law enforcement, Defendant indicated that he saw Melton with a knife, that Melton acted violently toward him and that Melton came toward him. It contended that photographs from the scene showed the living room in disarray, including a knocked-over coffee table. The trial court found that Melton coming toward Defendant was not a hostile or overt act and denied introduction of this evidence. The defense objected.

The defense then presented its two witnesses. Georgia Slaughter testified that on March 15, 2021, she was Melton's fiancée, and they lived on Heard Road. She stated that she did not know where Melton was that day because she was out of town. Erica Melton, Melton's sister, testified that she took her brother home around 6:00 or 7:00 p.m. on March 15, and he exited her car with a 30-pack of Busch and two half pints of Paul Masson.

On May 27, 2022, the jury found Defendant guilty of the responsive verdict of manslaughter.

On July 27, 2020, Defendant filed a motion for post-verdict judgment of acquittal and a motion for new trial. The trial court denied both motions.

4

At a hearing on August 30, 2022, the trial court sentenced Defendant to 17 years' imprisonment at hard labor without the benefit of parole, probation or suspension of sentence.

Defendant appeals his conviction.

## DISCUSSION

When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. *State v. Hearold*, 603 So. 2d 731 (La. 1992).

### *Insufficient Evidence*

Defendant argues that the state presented insufficient evidence to prove beyond a reasonable doubt that he committed manslaughter and was not acting in self-defense. He contends that the act of protecting oneself from an unwelcomed guest in one's home is justifiable homicide and that he had the right to stand his ground. He states that although he may have fired the fatal shots, he is not guilty of any offense because he did not have the specific intent to kill or inflict great bodily harm.

The state argues that it presented sufficient evidence for a jury to convict Defendant of second degree murder, even though the jury convicted him of manslaughter. It contends that it presented sufficient evidence for the jury to conclude that Defendant had the specific intent to commit manslaughter and to find that he did not act in self-defense.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*,

5

443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Hearold*, *supra*; *State v. Smith*, 47,983 (La. App. 2 Cir. 5/15/13), 116 So. 3d 884. *See also* La. C. Cr. P. art. 821. The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442.

When a defendant challenges the sufficiency of the evidence in a self-defense case involving a homicide, the question becomes whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense. *State v. Jackson*, 54,124 (La. App. 2 Cir. 1/12/22), 332 So. 3d 792, *writ denied*, 22-00298 (La. 4/12/22), 336 So. 3d 90. In the case *sub judice*, the jury was instructed, pursuant to La. R.S. 14:20(A)(1) and (2), that a homicide is justifiable:

> (1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
> (2) When committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.

A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and

in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21.

La. R.S. 14:30.1(A)(1) defines second degree murder as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. Specific criminal intent is that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10. Specific intent need not be proven as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. *State v. Graham*, 420 So. 2d 1126 (La. 1982). Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. *State v. Seals*, 95-0305 (La. 11/25/96), 684 So. 2d 368. It may also be inferred from the extent and severity of the victim's injuries and the defendant's use of a deadly weapon to produce those injuries. *State v. Washington*, 50,424 (La. App. 2 Cir. 3/16/16), 188 So. 3d 350, *writ denied*, 16-0718 (La. 4/13/17), 218 So. 3d 119.

In the case *sub judice*, the jury was instructed, pursuant to La. R.S. 14:31(A)(1), what constitutes manslaughter is:

> A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed [.]

Manslaughter is a responsive verdict to second degree murder. La. C. Cr. P. art. 814. A fact finder may return any legislatively provided responsive verdict, whether or not the evidence supports that verdict, as long as the

7

evidence was sufficient to support a conviction of the charged offense. *State v. Wisely*, 34,482 (La. App. 2 Cir. 2/28/01), 780 So. 2d 1230.

Viewing the evidence in the light most favorable to the prosecution, the state proved beyond a reasonable doubt that Defendant did not commit the homicide of Melton in self-defense. In response to Melton's alleged aggressive behavior, Defendant went into another room to retrieve a gun, which he then used to shoot Melton four times. Although Defendant denied shooting Melton in the back and stated that he shot Melton as he "came at" him, photographs of Melton's body at the scene and the forensic pathologist's testimony showed three gunshot wounds to Melton's back and one to his arm. Defendant attempted to explain his actions by saying that earlier in the day he saw Melton with a knife, but law enforcement did not find a knife at the scene. As discussed *infra*, the trial court correctly prevented Defendant from introducing evidence of an alleged hostile demonstration or overt act by Melton or of Melton's alleged habits.

The state also proved beyond a reasonable doubt that Defendant had the specific intent to kill or inflict great bodily harm upon Melton. Defendant told law enforcement that he shot Melton multiple times, and the testimony of the forensic pathologist confirmed that Melton was shot four times—three times in the back and once in the arm. Defendant's act of pointing a gun at Melton and firing multiple times demonstrates his specific intent to kill or inflict great bodily harm. Because there was sufficient evidence to convict Defendant of second degree murder, there was sufficient evidence to convict him of the responsive verdict of manslaughter.

Accordingly, this assignment of error lacks merit.

*Hostile Demonstration or Overt Act*

Defendant argues that the trial court deprived him of his right to present a defense when it excluded evidence of Melton's dangerous character in support of his plea of self-defense. He contends that a victim wielding a dangerous weapon and refusing to vacate his property is evidence of an overt act or hostile demonstration.

The state argues that the trial court correctly determined that the only evidence of an overt act was through Defendant's self-serving uncorroborated statements. It notes that Defendant did not know Melton and could not have had personal knowledge of Melton's threatening behavior.

Both the Sixth Amendment of the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee a criminal defendant the right to present a defense. *State v. Van Winkle*, 94-0947 (La. 6/30/95), 658 So. 2d 198. However, this right does not require the trial court to permit the introduction of evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. La. C.E. art. 403; *State v. Mosby*, 595 So. 2d 1135 (La. 1992); *State v. Johnson*, 41,428 (La. App. 2 Cir. 9/27/06), 940 So. 2d 711, *writ denied*, 06-2615 (La. 5/18/07), 957 So. 2d 150.

Prior to a 2023 amendment, La. C.E. art. 404 stated in pertinent part:

> **A. Character evidence generally.** Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible in a civil or criminal proceeding for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
> ***
> **(2) Character of victim.** (a) Except as provided in Article 412, evidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence of a hostile demonstration or an overt

9

act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible[.]
***
**B. Other crimes, wrongs, or acts.** (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. . . .
(2) In the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of the victim's prior threats against the accused or the accused's state of mind as to the victim's dangerous character is not admissible[.]

Although evidence of a person's character or a trait of his character is generally inadmissible for the purpose of proving that he acted in conformity therewith on a particular occasion, it may be introduced to support a plea of self-defense. *State v. Burton*, 19-01079 (La. 6/30/21), 320 So. 3d 1117. This type of evidence is admissible in support of a plea of self-defense in a murder prosecution for two distinct purposes: (1) to show defendant's reasonable apprehension of danger which would justify his conduct; and (2) to help determine who was the aggressor in the conflict. *State v. Lee*, 331 So. 2d 455 (La. 1975). Evidence of the decedent's dangerous character or of his threats against the accused may be admissible in support of his plea of self-defense, provided that the accused first produces evidence that the decedent had made a hostile demonstration or overt act against the accused at the time of the incident. *Id*. An overt act is any act of the deceased that manifests to the mind of a reasonable person a present intention on his part to kill defendant or do him great bodily harm. *Id*., *quoting State v. Brown*, 172 La. 121, 133 So. 383 (1931). A defendant's unsupported, self-serving testimony that is sufficiently contradicted by other evidence does not constitute appreciable evidence of an overt act or hostile demonstration on

10

the part of the victim. *State v. Kennell*, 54,577 (La. App. 2 Cir. 6/29/22), 342 So. 3d 437.

In this case, Defendant failed to present appreciable evidence that Melton made a hostile demonstration or overt act against him that would then allow him to introduce evidence of Melton's character. The only evidence available to prove a hostile demonstration or overt act was Defendant's unsupported and self-serving statements that Melton had a knife, acted violently and came toward Defendant. Law enforcement contradicted Defendant's statement that Melton was armed with a knife because they did not recover a knife from the scene of the shooting. Further, the act of Melton coming toward Defendant was not an overt act because it would not cause a reasonable person to believe that an unarmed Melton intended to kill him or do him great bodily harm. The trial court did not err in determining that Defendant could not introduce evidence of Melton's behavior because he failed to demonstrate that Melton made a hostile demonstration or overt act against him at the time of the incident.

Accordingly, this assignment of error lacks merit.

### Habit

Defendant argues that the trial court deprived him of his right to present a defense when it excluded evidence of Melton's habit in support of his plea of self-defense. He contends that upon showing that Melton was heavily intoxicated on the evening of the incident, he was entitled to present evidence of Melton's habitual or routine practice of consuming excessive alcohol and behaving erratically. He argues that evidence of Melton's habitual practices would have shown Melton as the aggressor and explained that Defendant's apprehension of danger and actions was reasonable.

11

The state argues that the trial court correctly determined that one video would not prove habit. It contends that the defense did not produce any evidence that the hand gestures made by Melton constituted bad character or showed any kind of violent nature.

La. C.E. art. 406 states:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice. The evidence may consist of testimony in the form of an opinion or evidence of specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine.

A habit or routine practice is very specific and must be nearly invariable and semi-automatic. *State v. Flowers*, 574 So. 2d 448 (La. App. 2 Cir. 1991), *writ denied*, 580 So. 2d 666 (La. 1991).

The trial court did not err when it determined that Defendant could not introduce a video to show that Melton had the habit of making hand gestures while listening to rap music and acting erratically when intoxicated. One video only shows a single occurrence, which is insufficient in number to show a habit or repetition of how someone might act. Notably, Defendant told law enforcement during his interview that although they were neighbors, he did not know Melton prior to the evening of the shooting. This admission by Defendant precludes any possible knowledge of Melton's alleged habit of becoming violent or aggressive while intoxicated. Therefore, he had no knowledge of Melton's alleged dangerous character or habits upon which he could base his argument of justifiable homicide.

Accordingly, this assignment of error lacks merit.

**ERROR PATENT**

A review of the record reveals that the trial court imposed Defendant's 17-year, hard-labor sentence without the benefit of parole, probation or suspension of sentence.

La. R.S. 14:31(B) states:

> Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. However, if the victim killed was under the age of ten years, the offender shall be imprisoned at hard labor, without benefit of probation or suspension of sentence, for not less than ten years nor more than forty years.

As the victim in this case was over the age of ten years, the trial court erred in ordering that Defendant's sentence be served without the benefit of parole, probation or suspension of sentence.

Accordingly, we vacate the portion of Defendant's sentence that denies the benefits of parole, probation and suspension of sentence and remand this matter to the trial court to make an entry in the minutes reflecting this change.

**CONCLUSION**

For the foregoing reasons, we affirm the conviction of Defendant Willie Derrick Jackson. We affirm as amended his sentence and remand to the trial court with instructions consistent with this opinion.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.**