Judgment rendered November 20, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,998-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                        Appellee

versus

JOSEPH LEE SMITH                          Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 381,969

Honorable John D. Mosely, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By: Peggy J. Sullivan

JAMES E. STEWART, SR.                     Counsel for Appellee
District Attorney

COURTNEY RAY
REBECCA A. EDWARDS
Assistant District Attorneys

* * * * *

Before PITMAN, ROBINSON, and MARCOTTE, JJ.

**PITMAN, C.J.**

A jury convicted Defendant Joseph Lee Smith of manslaughter, aggravated battery and obstruction of justice. After adjudicating him a second-felony habitual offender, the trial court sentenced him. Defendant appealed. This court vacated his sentences, dismissed the appeal and remanded for further proceedings. On remand, the trial court resentenced Defendant to 60 years at hard labor without benefit of parole, probation or suspension of sentence for the manslaughter conviction; 20 years at hard labor for the aggravated battery conviction; and 20 years at hard labor for the obstruction of justice conviction. The court ordered that the sentences for manslaughter and aggravated battery run consecutively with each other and that the obstruction of justice sentence run concurrently with the other sentences, with credit for time served. Defendant appeals his manslaughter conviction and sentences. For the following reasons, we affirm Defendant's convictions, affirm as amended his sentences and remand with instructions to correct the minute entry regarding sentencing.

## FACTS

On July 21, 2021, a Caddo Parish grand jury indicted Defendant on three counts—second degree murder, in violation of La. R.S. 14:30.1; aggravated battery, in violation of La. R.S. 14:34; and obstruction of justice, in violation of La. R.S. 14:130.1. The indictment alleged that on or about March 20, 2021, through March 23, 2021, Defendant committed the second degree murder of Mya Patel; committed a battery with a dangerous weapon, i.e., a firearm, upon Snehal Patel; and tampered with evidence with a specific intent of distorting the results of a criminal investigation.

A jury trial began on January 10, 2023. Ashley Harris, who considers Defendant family, testified that on March 20, 2021, she and her children were staying at the Super 8 motel at 4911 Monkhouse Drive. She knew the Patel family, who owned the Super 8 and lived on the property directly below her room. She stated that her children were playing in the window of their room and watching an altercation outside. She told them to get down from the window, and then she heard a gunshot. She went to the balcony and saw Defendant but did not see anything in his hands. She told him to come inside because there was a shooting. She noted that he acted like he wanted to come inside, but he got in his car and drove away. She went downstairs to look for Defendant but saw Snehal Patel, who was crying and screaming "my baby." She observed Vimal Patel carrying Mya, who was not moving. She noted that the Patels then left the scene. When law enforcement arrived, Harris gave a statement. She called Defendant and told him "you just killed a baby, man, you just shot a baby, you got to come back and turn yourself in." She explained that Defendant did not know what had happened, so he did not think she was telling the truth. On cross-examination, Harris confirmed that Defendant did not know that the child had been shot until she told him.

Latresha Smith, Defendant's cousin, testified that on March 20, 2021, Harris called and told her Defendant just shot a baby. She immediately went to the Super 8 and met with Harris, who told her that Defendant "got into it with some guy . . . and somehow [Defendant] shot a baby." While in the presence of law enforcement, she spoke to Defendant on speakerphone and encouraged him to turn himself in. She noted that he denied shooting a

2

baby. On cross-examination, defense counsel asked her if Defendant stated that he did not shoot the gun on purpose, but she could not recall.

Corporal Amber Futch, a crime scene investigator with the Shreveport Police Department, testified that on March 20, 2021, she responded to the Super 8. She identified and described a diagram of the 4900 block of Monkhouse Drive, which includes the Super 8, and diagrams of the motel area where the Patel family converted four motel rooms into their family residence. She also identified and described photographs of the crime scene.

Snehal Patel testified that in March 2021, she lived at 4911 Monkhouse Drive where her family owned and operated a Super 8 motel. She stated that she and her husband had two children—a daughter and son. She identified a photograph of her daughter, Mya, which was taken on her fifth birthday, and noted that Mya passed away when she was 5 ½ years old. She testified that on March 20, 2021, she was at home with her children while her husband was picking up an item at the motel next door. She heard a gunshot and turned to see Mya on the floor. She described that she saw "blood coming out, a piece of her brain was sitting there or the skin" and noted that she knew it was a gunshot because of the hole in the window. She stated that Mya was not talking or breathing. She then screamed for her husband and called 911. She handed Mya to Mr. Patel when he arrived home. Mr. Patel then placed Mya in their vehicle and drove them to the hospital. After they arrived at the emergency room, she realized she was bleeding. She explained that she did not know she had been grazed on her right side because her focus was on Mya. While she was being treated, Mya, accompanied by Mr. Patel, was transported to another hospital. She testified that Mya did not survive her injury and passed away on March 21, 2021.

Vimal Patel testified that in March 2021, he owned, managed and lived at a Super 8 located at 4911 Monkhouse Drive. He stated that he left home for five minutes to pick up an ingredient for lunch and when he returned, his wife met him at his vehicle and was screaming that their daughter had been shot. Mrs. Patel handed Mya to him and he placed her in the vehicle and drove them to the hospital. Doctors informed him that Mya needed to be transferred to a different hospital, and he rode in the ambulance with Mya while Mrs. Patel remained for treatment of her wound. He testified that they have two times of death for Mya—March 21 when she was pronounced dead and March 23 when she was removed from life support after donating her organs.

Holly Sanford testified that on March 20, 2021, she was at the Super 8 with Chevlon Thomas. She stated that they were in the parking lot when a vehicle drove up and stopped. She testified that Defendant exited the vehicle and began yelling, Defendant and Thomas had an altercation and a gun went off. At first, she did not see that Defendant had a weapon but then saw him waving the weapon and trying to intimidate Thomas with it. She noted that she did not know if Defendant was pointing the weapon at anyone. She testified that after Defendant shot the gun, Thomas ran away.

Taylor King testified that in March 2021, she was living in Longview, Texas, but staying at the Super 8 on Monkhouse Drive. She was friends with Defendant and knew of Thomas because he stole her gun. On March 20, 2021, she and Defendant were in a vehicle at the Super 8 when Defendant jumped out to approach Thomas. She recalled that Defendant and Thomas began arguing, but she never saw Defendant with a firearm in his hand. She heard a gunshot and thought Defendant shot Thomas.

4

Defendant then jumped in the vehicle, and they drove to a motel down the street where she left Defendant. She then returned to the Super 8. About an hour later, she picked up Defendant, and he drove them to Longview. She noted that his mother called and told them a baby was in the hospital. She stated that Defendant recorded a video to show his side of the story, i.e., that it was a horrible accident, and then she posted the video on her Facebook account. The jury then viewed the video. King testified that law enforcement arrived at her house in Longview.

Anna Russell, King's mother, testified that she encountered King and Defendant in Longview following the shooting. She took Defendant and King to King's apartment and then went to the Longview Police Department to inform law enforcement of Defendant's location. She explained that she wanted to get Defendant away from her daughter.

Officer Danntionnette Ross of the Shreveport Police Department testified that on March 20, 2021, she was dispatched to the Super 8 in reference to a shooting. She met with a woman, who told her Defendant was the shooter. The woman spoke to Defendant on speakerphone, and Ofc. Ross heard the woman tell Defendant that he shot a baby and needed to turn himself in, and he responded that he did not shoot a baby, that he would not turn himself in and that he shot at a man who stole money from him.

Corporal Matthew Dixon of the crime scene investigation division of the Shreveport Police Department testified that on March 20, 2021, he responded to a shooting at the Super 8. His photographs of the scene were published to the jury. He described photographs of the suspected projectile and of dowel rods used to determine the trajectory of the suspected projectile through a window. He stated that he collected the projectile from the scene

and that it was sent to the crime lab. He testified that on March 23, 2021, he went to an address on Buncombe Road to search a wooded area for a weapon, but law enforcement did not find one at that location.

Detective Adam McEntee of the Shreveport Police Department testified that in March 2021, he assisted in the homicide investigation. He obtained video from surveillance cameras at the Super 8. Portions of the recordings from March 20, 2021, were published to the jury.

Corporal Jonathan Varnell of the Shreveport Police Department's violent crimes unit testified that on March 20, 2021, he responded to 4911 Monkhouse Drive. He met with Harris, who told him that she heard a gunshot and observed Defendant run toward his vehicle with a gun in his hand. He was present when Smith spoke with Defendant on speakerphone and heard Defendant say he did not know he shot anyone, that law enforcement did not know who he was and that he was not going to turn himself in. He stated that law enforcement learned that Defendant had a girlfriend staying at the Merryton Inn, and they confiscated a black handgun found in a search of the room. Cpl. Varnell noted that the handgun was consistent with the type of handgun possibly used in the homicide.

Cpl. Varnell further testified that on March 21, 2021, the Longview Police Department contacted him because they had taken Defendant into custody. He and two detectives traveled to Longview to execute a search warrant at King's apartment and to interview King and Russell. He noted that King explained that Thomas stole her handgun earlier in the week, she pointed Thomas out to Defendant at the Super 8 and Defendant confronted Thomas while holding a handgun. She told him that Defendant was trying to get the gun back from Thomas and that when Defendant hit Thomas on

6

the arm, Defendant's gun discharged once. She stated that she and Defendant then left the scene, and she drove him to the Merryton Inn. She later picked him up from the Merryton Inn and drove them to Longview. King told Cpl. Varnell that she believed Defendant had the handgun with him when he was taken into custody, but no gun was found on Defendant. He testified that he interviewed Defendant after advising him of his Miranda rights. Portions of the recording of the interview were published to the jury. He noted that Defendant said he threw the handgun behind his mother's trailer. Other officers searched the area for the firearm but did not locate it. A month after the shooting, he interviewed Sanford, who told him that Defendant exited his vehicle, approached Thomas over a stolen gun, hit Thomas on the arm and his gun discharged once. On cross-examination, he stated that based on the crime lab's findings, the handgun recovered from the Merryton Inn is not related to the homicide.

Phillip Stout of the North Louisiana Crime Lab was accepted as an expert in firearms identification and comparison. He analyzed the projectile recovered from 4911 Monkhouse Drive and the firearm recovered from the Merryton Inn. He determined that the projectile, a 9-millimeter bullet, was not fired from the firearm. He explained that a finger must be on the trigger to fire semi-automatic and automatic pistols and that these types of weapons do not fire on their own. He also stated that for a bullet to be discharged from semi-automatic and automatic pistols, a round has to already be in the chamber. When asked if a firearm can fire if dropped, he explained that the individual firearm would need to be tested.

Long Jin, MD, was accepted as an expert in the field of forensic pathology. He testified that he performed the autopsy on five-year-old Mya

Patel. He identified and described photographs he took during the autopsy, and some were published to the jury. He stated the cause of death to be a single perforating gunshot wound to the head through an intermediary target and that the manner of death was homicide.

On January 12, 2023, the jury found Defendant guilty of the responsive verdict of manslaughter, guilty as charged of aggravated battery and guilty as charged of obstruction of justice.

On February 24, 2023, Defendant filed a motion for judgment of acquittal and a motion for new trial.

On March 6, 2023, the state filed a second-felony habitual offender bill of information. It alleged that Defendant's first-felony conviction was possession of a firearm by a convicted felon, to which he pled guilty on September 7, 2016, and was sentenced to ten years at hard labor.

A sentencing hearing was held on March 23, 2023. The trial court found Defendant to be a second-felony habitual offender. It sentenced him to 60 years at hard labor without benefit of parole, probation or suspension of sentence for the manslaughter conviction; 20 years at hard labor without benefit of parole, probation or suspension of sentence for the aggravated battery conviction; and 20 years at hard labor without benefit of parole, probation or suspension of sentence for the obstruction of justice conviction. It ordered the sentences to run consecutively, with credit for time served.

Defendant appealed.

On appeal, this court determined that the trial court failed to rule on Defendant's motions for post-verdict judgment of acquittal and for new trial prior to sentencing, as required by La. C. Cr. P. arts. 821 and 853. *State v.*

8

*Smith*, 55,584 (La. App. 2 Cir. 11/9/23). This court vacated Defendant's sentences, dismissed the appeal and remanded for further proceedings.

On remand, the trial court denied Defendant's motions for post-verdict judgment of acquittal and for new trial.

A resentencing hearing was held on February 22, 2024. The trial court noted that Defendant expressed some remorse, that the shooting victims were an innocent five-year-old and her mother and that Defendant was not shooting at the victims but was engaged in a conflict with a man over a stolen gun. The trial court stated that it considered all the sentencing factors and trial testimony, noting that a weapon was used, that it was a violent offense and that an innocent life was taken. The trial court sentenced Defendant to 60 years at hard labor without benefit of parole, probation or suspension of sentence for the manslaughter conviction; 20 years at hard labor for the aggravated battery conviction; and 20 years at hard labor for the obstruction of justice conviction. It stated that the sentences for manslaughter and aggravated battery are to run consecutively with each other and that the obstruction of justice sentence is to run concurrently with the other sentences, with credit for time served.

Defendant appeals his manslaughter conviction and sentences.

## DISCUSSION

### *Sufficiency of the Evidence*

In his first assignment of error, Defendant argues that the evidence adduced at trial did not prove beyond a reasonable doubt that he was guilty of manslaughter. He contends that the evidence shows that what occurred was an accident—the gun discharged when he struck Thomas's arm with the side of the gun. He states that he did not intentionally fire the weapon and

9

did not have the specific intent to kill or inflict great bodily harm. He asserts that the proper verdict in this case is negligent homicide.

The state argues that it proved beyond a reasonable doubt that Defendant had the specific intent to kill or inflict great bodily harm when he confronted Thomas with a loaded pistol, waved it about, pointed it at Thomas, discharged it at him, fled the scene and disposed of the weapon. It contends that because the evidence was sufficient to support a conviction for the charged offense of second degree murder, the jury's manslaughter verdict was proper.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Hearold*, 603 So. 2d 731 (La. 1992). *See also* La. C. Cr. P. art. 821. The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442.

La. R.S. 14:30.1(A)(1) defines second degree murder as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. Specific criminal intent is that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10. Specific intent need not be proven as a fact; it may be inferred

10

from the circumstances of the transaction and the actions of the defendant. *State v. Graham*, 420 So. 2d 1126 (La. 1982). Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. *State v. Seals*, 95-0305 (La. 11/25/96), 684 So. 2d 368.

When a person shoots at an intended victim with the specific intent to kill or inflict great bodily harm and accidentally kills or inflicts great bodily harm upon another person, if the killing or inflicting of great bodily harm would have been unlawful against the intended victim actually intended to be shot, then it would be unlawful against the person actually shot, even though that person was not the intended victim. *State v. Strogen*, 35,871 (La. App. 2 Cir. 4/3/02), 814 So. 2d 725, *writ denied*, 02-1513 (La. 12/13/02), 831 So. 2d 983.

Manslaughter is a responsive verdict to second degree murder. La. C. Cr. P. art. 814. In the case *sub judice*, the jury was instructed that, pursuant to La. R.S. 14:31(A)(1), manslaughter is:

A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]

A fact finder may return any legislatively provided responsive verdict, whether or not the evidence supports that verdict, as long as the evidence was sufficient to support a conviction of the charged offense. *State v. Wisely*, 34,482 (La. App. 2 Cir. 2/28/01), 780 So. 2d 1230.

Viewing the evidence in the light most favorable to the prosecution, the state proved beyond a reasonable doubt that Defendant had the specific

11

intent to kill or inflict great bodily harm upon Thomas. The surveillance video from the Super 8 shows Defendant exit a vehicle holding a firearm, hold and wave the firearm for the entirety of the altercation with Thomas, point the firearm at Thomas, strike Thomas on the arm with the firearm, discharge the firearm and flee the scene. These actions demonstrate Defendant's specific intent to kill or inflict great bodily harm upon Thomas, and this intent transferred to the actual victim, Mya Patel. Because there was sufficient evidence to convict Defendant of second degree murder, there was sufficient evidence to convict him of the responsive verdict of manslaughter.

Accordingly, this assignment of error lacks merit.

*Excessive Sentences*

In his second assignment of error, Defendant argues that his aggregate sentence of 80 years at hard labor is shockingly excessive in light of the facts and circumstances of this case. He contends that 80 years for a tragic accident does nothing to further the ends of justice and that the imposed sentences are effectively a life sentence for him as he is 27 years old.

The state argues that as Defendant did not file a motion to reconsider sentence or object after resentencing, he is limited to a claim of constitutional excessiveness. Considering the facts of the case, the state argues that the sentences are not grossly disproportionate to the severity of the offense, shocking to the sense of justice or a purposeless infliction of pain and suffering and therefore are not constitutionally excessive.

When a defendant fails to make a motion to reconsider sentence, the appellate court's review of the sentence is limited to a bare claim of constitutional excessiveness. *State v. Mims*, 619 So. 2d 1059 (La. 1993). A

12

sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So. 2d 1, *citing State v. Bonanno*, 384 So. 2d 355 (La. 1980).

If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory. *State v. Heath*, 53,559 (La. App. 2 Cir. 11/10/20), 304 So. 3d 1105, *writ denied*, 20-01422 (La. 4/7/21), 313 So. 3d 981. Consecutive sentences under those circumstances are not necessarily excessive. *Id.* It is within the court's discretion to make sentences consecutive rather than concurrent. *Id.* Factors to be considered in imposing consecutive sentences include the gravity and viciousness of the offense, the harm done to the victims, the risk of danger to the public, the offender's criminal history and his potential for rehabilitation. *Id.* The failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. *State v. Sandifer*, 54,103 (La. App. 2 Cir. 12/15/21), 330 So. 3d 1270.

The trial court has wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of discretion. *State v. Abercrumbia*, 412 So. 2d 1027 (La. 1982). On review, an appellate court does not determine whether another sentence may have been more

13

appropriate but whether the trial court abused its discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7, *citing State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957.

Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. La. R.S. 14:31(B). However, if the victim killed was under the age of ten years, the offender shall be imprisoned at hard labor, without benefit of probation or suspension of sentence, for not less than ten years nor more than forty years. *Id.*

Whoever commits an aggravated battery shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than ten years, or both. La. R.S. 14:34(B).

At the time of the commission of the crime in March 2021, La. R.S. 14:130.1(B) set forth the following sentences for obstruction of justice:

> (1) When the obstruction of justice involves a criminal proceeding in which a sentence of death or life imprisonment may be imposed, the offender shall be fined not more than one hundred thousand dollars, imprisoned for not more than forty years at hard labor, or both.
> (2) When the obstruction of justice involves a criminal proceeding in which a sentence of imprisonment necessarily at hard labor for any period less than a life sentence may be imposed, the offender may be fined not more than fifty thousand dollars, or imprisoned for not more than twenty years at hard labor, or both.
> (3) When the obstruction of justice involves any other criminal proceeding, the offender shall be fined not more than ten thousand dollars, imprisoned for not more than five years, with or without hard labor, or both.

The habitual offender statute, La. R.S. 15:529.1, states in pertinent part:

> A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within

14

this state, upon conviction of said felony, shall be punished as follows:

(1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-third the longest term and not more than twice the longest term prescribed for a first conviction.

\*\*\*

G. Any sentence imposed under the provisions of this Section shall be at hard labor without benefit of probation or suspension of sentence.

The trial court did not abuse its discretion when sentencing Defendant to 60 years at hard labor for the manslaughter conviction. Considering the application of the habitual offender statute and the facts of this case, including that the victim was under the age of ten, the trial court imposed a midrange sentence that is not grossly out of proportion to the seriousness of the offense. However, the trial court erred when it ordered that the sentence be served without benefit of parole. La. R.S. 14:31(B); La. R.S. 15:529.1(G). Pursuant to La. C. Cr. P. art. 882, we amend Defendant's sentence for manslaughter to remove the portion that denies him eligibility for parole.

The trial court did not abuse its discretion by sentencing Defendant to 20 years at hard labor for the aggravated battery conviction. Although this is the maximum sentence allowed under La. R.S. 15:529.1(A)(1), considering the facts of this case, the sentence is not grossly out of proportion to the seriousness of the offense. The trial court did err in failing to impose this sentence without benefit of probation or suspension of sentence, as required by La. R.S. 15:529.1(G). Pursuant to La. C. Cr. P. art. 882, we amend

15

Defendant's sentence for aggravated battery to provide that the sentence be served without benefit of probation or suspension of sentence.

The trial court did not abuse its discretion when sentencing Defendant to 20 years at hard labor for the obstruction of justice conviction. With the application of La. R.S. 15:529.1(A)(1), this is a midrange sentence. Considering the facts of this case, the sentence is not grossly out of proportion to the seriousness of the offense. The trial court did err in failing to impose this sentence without benefit of probation or suspension of sentence, as required by La. R.S. 15:529.1(G). Pursuant to La. C. Cr. P. art. 882, we amend Defendant's sentence for obstruction of justice to provide that the sentence be served without benefit of probation or suspension of sentence.

Further, the trial court did not abuse its discretion in ordering that the sentences for manslaughter and aggravated battery run consecutively to each other. The trial court detailed its findings during the sentencing hearing, and the record provides an adequate factual basis to support consecutive sentences.

Accordingly, this assignment of error lacks merit, except as noted above for the errors as to the impositions of benefits.

## ERRORS PATENT

A review of the record revealed several errors by the trial court when sentencing Defendant. As discussed above, the trial court erred when it ordered the sentence for manslaughter to be served without parole and failed to order that the aggravated battery and obstruction of justice sentences be served without benefit of probation or suspension of sentence. Additionally, the minutes do not reflect that the sentence for manslaughter shall be served

16

without benefits. When there is a discrepancy between the minutes and the transcript, the transcript prevails. *State v. Lynch*, 441 So. 2d 732 (La. 1983); *State v. Burns*, 53,250 (La. App. 2 Cir. 1/15/20), 290 So. 3d 721. Accordingly, on remand, the trial court shall order that the minute entry for February 22, 2024, be corrected to add that the sentences shall be served without benefit of probation or suspension of sentence.

The trial court also failed to advise Defendant of his rights at the habitual offender hearing. In *State v. Simpson*, 55,304 (La. App. 2 Cir. 11/15/23), 374 So. 3d 1056, *writ denied*, 23-01641 (La. 5/29/24), 385 So. 3d 703, this court explained:

> La. R.S. 15:529.1(D)(1)(a) requires that the defendant be advised of the specific allegations contained in the habitual offender bill of information and his right to a formal hearing at which the State must prove its case. Implicit in this requirement is the additional requirement that the defendant be advised of his constitutional right to remain silent. *State v. Mason*, 37,486 (La. App. 2 Cir. 12/10/03), 862 So. 2d 1077 (citing *State v. Bell*, 03-217 (La. App. 5 Cir. 5/28/03), 848 So. 2d 87). In addition, this court has found that the failure to properly advise a defendant of his right to have 15 days in which to object to the habitual offender bill of information constitutes an error on the face of the record. *State v. Taylor*, 53,934 (La. App. 2 Cir. 5/5/21), 321 So. 3d 486.
>
> However, the failure to advise a defendant of his rights is considered harmless error when the defendant's habitual offender status is established by competent evidence offered by the State at the hearing rather than by admission of the defendant. *State v. McKeever*, 55,260 (La. App. 2 Cir. 9/27/23), 371 So.3d 1156.

Although Defendant was not advised of his rights at the habitual offender hearing, this was harmless error. The state established Defendant's habitual offender status by competent evidence, including the testimony of an expert in fingerprint identification and analysis, and Defendant did not testify at the hearing.

17

**CONCLUSION**

For the foregoing reasons, we affirm Defendant Joseph Lee Smith's convictions, affirm as amended his sentences and remand with instructions to correct the minute entry regarding sentencing.

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED AS AMENDED; REMANDED FOR CORRECTION OF MINUTE ENTRY.**